**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, *EX REL.* KWAME RAOUL, ATTORNEY GENERAL, <br><br> Plaintiff, <br><br> v. <br><br> MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA LLC, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)   No.  1:22-cv-05339<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, *et seq.* and 28 U.S.C. § 1442(a)(1), Defendants Monsanto Company ("New Monsanto"), Solutia Inc. ("Solutia"), and Pharmacia LLC ("Pharmacia" or "Old Monsanto") (collectively, "Defendants") hereby remove this action to the United States District Court for the Northern District of Illinois. As grounds for removal, Defendants state:

1.    This Court has jurisdiction and the case is removable pursuant to 28 U.S.C. § 1442(a)(1), in that Defendants are being sued for actions they took under contract with or direction of the United States and various federal agencies and wish to assert federal affirmative defenses.

## BACKGROUND

2.    On August 29, 2022, Plaintiff filed a Complaint ("Compl.") against Defendants in the Circuit Court of Cook County, Illinois, County Department Law Division, styled *People of the State of Illinois,* ex rel. *Kwame Raoul, Attorney General v. Monsanto Company, Solutia Inc., and*

*Pharmacia LLC*, Case No. 2022L007763 (the "Lawsuit"). A copy of the Lawsuit and other state court pleadings are attached as **Exhibit 1**.

3.      On August 30, 2022, Defendants were served with the summons and complaint. Copies of the summonses served on Defendants are attached as **Exhibit 2**.

4.      The State's sweeping Complaint broadly alleges that, for decades, Defendants manufactured, marketed, and sold a bulk-supplied industrial chemical—polychlorinated biphenyls (PCBs)—that have now, through their use and disposal by myriad third-parties, led to the alleged environmental contamination of the State's creeks, rivers, lakes, and beaches, and the degradation of its wildlife and other natural resources. The State alleges that "Defendants failed to exercise ordinary care because a reasonably careful company that knew or should have known that its products could not be contained during normal production and use would not continue to manufacture or distribute those products or would warn of their dangers." Compl. ¶ 366. The State also alleges that Defendants actively released into the environment from the Defendants' W.G. Krummrich Plant in Sauget, Illinois a variety of "hazardous substances," including polychlorinated biphenyls (PCBs), dioxins, chlorobenzenes, nitrochlorobenzene, mercury contaminated wastes, phenols, and phosphorous. The alleged discharge of these chemicals from the Krummrich plant arose under the direction and control of the federal government, thus giving rise to colorable federal defenses that warrant the removal of this action, pursuant to 28 U.S.C. § 1442(a)(1).

## THIS CASE IS REMOVABLE UNDER 28 U.S.C. § 1442(a)(1)

5.      Federal officer removal under 28 U.S.C. § 1442(a)(1) is appropriate when "the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner v. Boeing Company*, 910 F.3d 1010, 1015 (7th Cir. 2018).

6.     "The Supreme Court of the United States has made clear that the federal officer removal statute must be 'liberally construed.'" *Perez v. Air & Liquid Sys. Corp.*, 223 F. Supp. 3d 756, 759 (S.D. Ill. 2016).

7.     This action satisfies all four requirements of the federal officer removal statute.

## I.     Old Monsanto is a "person" under § 1442(a)(1)

8.     It is settled, as a matter of law, that a corporation is a "person" for purposes of § 1442(a)(1). 1 U.S.C. § 1; *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012).

## II.     Old Monsanto acted under federal officers and agencies

9.     A defendant acts under federal officers and agencies when its actions involve "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007).

10.     Old Monsanto acted under federal officers and agencies, and assisted them to perform their official functions, in several respects:

### A.     *World War II Operations*

11.     Before and during World War II, the military faced serious shortages of certain specialty chemicals that were essential for the war effort. There were no civilian markets for or producers of these chemicals. The Chemical Warfare Service (CWS), a part of the War Department (now the Department of Defense), had the responsibility to obtain these vital chemicals.

12.     In 1940, CWS contracted with Old Monsanto to build a chemical plant for the production of CC-2, a/k/a Impregnate II, on land immediately north of Old Monsanto's W.G. Krummrich Plant. Within the next three years, Old Monsanto built two more plants for CWS, one to produce additional CC-2 and another to produce dichloramine-T (DAT). Declaration of Adam E. Miller ("Miller Decl.") ¶ 2.

3

13.   CWS contracted with Old Monsanto to operate all three plants. At all times, Old Monsanto operated these plants under the direction and control of the plants' four commanding officers: Major Frank Johnson, Major Baughman, Major George W. Russell, and Major Willard L. Finley. All four officers were stationed at the plants and onsite daily. Miller Decl. ¶ 2.

**B.    *Vietnam War Operations***

14.   During the Vietnam War, the Department of Defense contracted with Old Monsanto to manufacture an herbicide known as Agent Orange. The military used Agent Orange as a defoliant in Vietnam to aid in its military objectives. *In re "Agent Orange" Product Liability Lit.*, 304 F. Supp. 2d 442, 449 (E.D.N.Y. 2004), *aff'd*, 517 F.3d 129 (2d Cir. 2008).

15.   Between 1965 and 1968 or 1969, Old Monsanto manufactured Agent Orange according to specifications given by the Department of Defense. *Id.* Agent Orange was a mixture of two chemical compounds: 2,4-D and 2,4,5-T. *Id.* Old Monsanto manufactured 2,4-D at the W.G. Krummrich Plant and 2,4,5-T at a plant in West Virginia. It combined the two chemical compounds into Agent Orange at the W.G. Krummrich Plant, again, according to specifications supplied by the Department of Defense.

**C.    *PCB Production***

16.   Between the 1930s and 1977, Old Monsanto manufactured and sold PCBs at the W.G. Krummrich Plant.  By 1972, Old Monsanto had ceased production and sale of PCBs for all uses except enclosed uses in electrical transformers and capacitors. Miller Decl. ¶ 3. Representatives of both the electrical industry and the federal government recommended that Old Monsanto continue the production and sale of PCBs for transformers and capacitors, and warned that discontinuing the production and sale of PCBs for such purposes would cripple the nation's power grid.

4

17.     Even after Old Monsanto ceased production and sale of PCBs except for enclosed electrical applications, in at least 1972 and 1974, the federal government directed Old Monsanto to accept purchase orders from companies for PCBs which Old Monsanto no longer sold for such purposes. Miller Decl. ¶¶ 6-8.

18.     Old Monsanto told the government that it "question[ed] the wisdom of [it] directing [Old Monsanto] to sell this material" when "alternate acceptable materials are available . . . ." Miller Decl. ¶ 7. Nevertheless, Old Monsanto complied with the government's directive pursuant to the Defense Production Act of 1950. *Id*.

19.     In March 1972, five federal agencies – the Departments of Agriculture, Commerce, Health, Education and Welfare, and Interior, and the Environmental Protection Agency (EPA) – issued an interdepartmental task force report on PCBs. That report found that the continued use of PCBs in capacitors and transformers was "necessary because of the significantly increased risk of fire and explosion and the disruption of electrical service which would result from a ban on PCB use." Miller Decl. ¶ 3.

20.     As recommended by the federal government, Old Monsanto continued to produce PCBs at the W.G. Krummrich Plant until 1977.

**III.    Plaintiff's claims arise, in whole or in part, from actions taken by Old Monsanto to assist federal officers and agencies**

21.     A defendant acts under the color of federal authority when there is a causal connection between the plaintiff's alleged harm and the defendant's asserted official authority. *Baker v. Atlantic Ritchfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020).

22.     The Lawsuit arises, in whole or in part, from the actions that Old Monsanto took in furtherance of the foregoing activities under the direction, supervision, and control of federal officers and agencies.

23.     The Seventh Circuit has abandoned the rigid "causal connection" test for the federal officer removal statute. *Baker*, 962 F.3d at 944. Under the relaxed Seventh Circuit standard, federal officer removal is appropriate for removal of actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.* at 943 (citations removed) (emphasis original). Moreover, it is enough "for the present purposes of removal that at least some of the pollution" that Plaintiff alleges "arose from the federal acts." *Id.* at 945.

### A.     *World War II*

24.     The chemicals used or produced in the wartime production at the W.G. Krummrich Plant included a number of potentially hazardous substances, including aniline hydrochloride, dichloroaniline, acetic acid, ammonium chloride, ammonium acetate, ammonium sulfate, acetyl urea, trichloroacetinide, acetylene tetrachloride, benzyl, benzaldehyde, benzoin, sodium cyanide, sodium nitrate, sulfuric acid, guanidine carbonate, chlorine, sodium hydroxide, hydrochloric acid, and ethanol. Miller Decl. ¶¶ 4, 5.

25.     The plants that Old Monsanto operated under contract with CWS used PCBs and had PCB transformers. Some leaks of PCBs may have occurred during these operations. Miller Decl. ¶ 4.

26.     The federal officers in charge of the CWS plants controlled every aspect of their operation, including the purchase of raw materials, the handling of all products at the plant, and the disposition of all waste materials, in accordance with then-prevailing environmental standards. Miller Decl. ¶ 5. All raw materials, finished materials, and residues were the property of the government. *Id*.

27.     Under the direction of CWS, Old Monsanto dumped waste materials including general CWS plant trash, floor sweepings, solvent-soaked rags, process residues, and drums containing liquid wastes into dumpsters at the CWS plant. Miller Decl. ¶ 4. At the direction of

CWS, Old Monsanto hauled the CWS dumpsters to the Sauget dump in the Village of Sauget and/or other landfills Plaintiff has placed at issue. *Id.*; *see, e.g.*, Compl. ¶¶ 233, 234, 235, 236.

28.     To the extent that hazardous substances were used and/or released at the W.G. Krummrich Plant or other landfills, a portion of those uses or releases would have occurred during the period of time from 1942 to 1945.

### B.      Vietnam War

29.     The two primary ingredients in Agent Orange – 2,4,5-T and 2,4-D – are two chemical compounds placed at issue by Plaintiff. *See* Compl. ¶ 215 ("In 1947, Old Monsanto began to produce 2,4-D and 2,4,5-T weed and brush killers at the [Krummrich] Plant.").

30.     As stated above, Old Monsanto manufactured 2,4-D at the W.G. Krummrich Plant and 2,4,5-T at a plant in West Virginia. It combined the two chemical compounds into Agent Orange at the W.G. Krummrich Plant according to specifications supplied by the Department of Defense.

31.     One of the ingredients in Agent Orange, 2,4,5-T, are alleged to contain miniscule amounts of a chemical popularly known as dioxin. Thus, Agent Orange, which Old Monsanto prepared to Department of Defense specifications, can also contain miniscule amounts of dioxin, which Plaintiff has placed directly at issue in this case. *See* Compl. ¶ 224 ("For decades, Old Monsanto discharged massive amounts of hazardous wastes, including vast quantities of . . . dioxins . . . generated at the Krummrich Plant or shipped to the Krummrich Plant, into the surrounding environment, damaging Illinois natural resources."); *see, e.g., id.* ¶¶ 25, 253, 256, 311, 401, 406, 411, 416, 421, 426, 433, 436, 445, 451.

32.     Old Monsanto manufactured and handled Agent Orange in accordance with specifications set by the Department of Defense and in accordance with then-prevailing environmental standards. The contracts between the federal government and the manufacturers of

Agent Orange, including Old Monsanto, contained "detailed specifications for the herbicide," specifications that "were promulgated by the government." *In re "Agent Orange" Product Liability Lit.*, 304 F. Supp. 2d 442, 449 (E.D.N.Y. 2004), *aff'd*, 517 F.3d 129 (2d Cir. 2008). The government "commandeered the United States industry's entire capacity to manufacture 2,4,5-T." *Id.* Under the contract with the Department of Defense, the Department took title to and possession of the Agent Orange at the W.G. Krummrich Plant. To the extent that hazardous substances were released at the W.G. Krummrich Plant, a portion of those releases would have occurred during the period of time from 1965 to 1969.

###### C.    PCBs

33.    Old Monsanto manufactured PCBs through 1977, as urged and directed by the United States, and in accordance with then-prevailing environmental standards. To the extent PCBs were used and/or released at the W.G. Krummrich Plant, a portion of those uses or releases would have occurred during the period of time that Old Monsanto manufactured PCBs.

### IV.    Defendants have colorable defenses to Plaintiff's claims

34.    The government contractor defense applies where "(1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment's dangers that were unknown to the government." *Betzner*, 910 F.3d at 1016.

35.    Defendants have a colorable federal defense under the government contractor defense, in that Old Monsanto operated the CWS plants under the direction and control of the federal government, and produced products for the federal government under reasonably precise specifications approved by the federal government, the products conformed to those specifications, and the federal government knew at least as much as Old Monsanto about the potential dangers of such products.

36.     Defendants have a colorable federal defense to the State's claims based on 50 U.S.C.A. § 4557, in that the production, mixture, and sale of Agent Orange was done pursuant to an order of the Department of Defense.

37.     Defendants have a colorable federal defense to these claims based on the principles that underlie the government contractor defense for the production of PCBs, specifically:

      A.     The federal government recommended Old Monsanto produce and sell PCBs for certain purposes, which it had already discontinued, post-1970.

      B.     The federal government had a uniquely federal interest in recommending continued production of PCBs to keep the national power grid in operation during the 1970s.

## REMOVAL IS TIMELY

38.     The summonses and complaint contained in **Exhibits 1** and **2** hereto are the only process, pleadings, or orders served upon the Defendants to date in this action.

39.     Service on Defendants was effected on August 30, 2022, and this notice of removal has been filed within 30 days of that date.

40.     Defendants will serve all other parties with copies of this notice and will file a notice of filing of same with the Clerk of the Circuit Court of Cook County, Illinois, County Department Law Division, as required by 28 U.S.C. § 1446(d).

## JURY TRIAL DEMANDED

41.     Defendants demand a trial by jury on all issues.

WHEREFORE, Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC give notice that the Lawsuit is removed from the Circuit Court in and for Cook County, Illinois, County Department Law Division, to the United States District Court for the Northern District of Illinois, for the exercise of jurisdiction over the Lawsuit as though the Lawsuit had originally been instituted in this Court.

Dated:  September 29, 2022

Respectfully submitted,

**MONSANTO COMPANY,**
**SOLUTIA INC., and PHARMACIA LLC**

By:  /s/  *Adam E. Miller*
      One of Their Attorneys

Adam E. Miller (6206249)
**SHOOK, HARDY & BACON L.L.P.**
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO  63105
Telephone:  (314) 690-0200
amiller@shb.com

Riley C. Mendoza (6314666)
William F. Northrip (6315988)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606
Telephone:  (312) 704-7700
rmendoza@shb.com
wnorthrip@shb.com

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

I, Adam E. Miller, an attorney, hereby certify that on **September 29, 2022**, I caused a

true and complete copy of the foregoing **NOTICE OF REMOVAL** to be electronically filed

with the Court via the Court's ECF system. I further certify that I emailed a copy of same upon

the following counsel of record:

| | |
|---|---|
| Stephen J. Sylvester | Joseph A. Power |
| Gerald Karr | Larry R. Rogers, Jr. |
| Elizabeth Dubats | Robert Thomas |
| **OFFICE OF THE ILLINOIS** | Jonathan M. Thomas |
| **ATTORNEY GENERAL** | James Power |
| Environmental Bureau | **POWER ROGERS LLP** |
| 69 West Washington Street, Suite 1800 | 70 West Madison Street, Suite 5500 |
| Chicago, IL 60602 | Chicago, IL 60602 |
| (312) 814-2550 | (312) 236-9381 |
| stephen.sylvester@ilag.gov | joepower@PowerRogers.com |
| gerald.karr@ilag.gov | lrogersjr@PowerRogers.com |
| elizabeth.dubats@ilag.gov | rthomas@PowerRogers.com |
| | jthomas@PowerRogers.com |
| Jay W. Eisenhofer | jamespower@PowerRogers.com |
| Kyle J. McGee | |
| Viola Vetter | |
| Jason H. Wilson | |
| Juliana Carter | |
| **GRANT & EISENHOFER P.A.** | |
| 123 South Justison Street | |
| Wilmington, DE 19801 | |
| (302) 622-7000 | |
| jeisenhofer@gelaw.com | |
| kmcgee@gelaw.com | |
| vvetter@gelaw.com | |
| jwilson@gelaw.com | |
| jcarter@gelaw.com | |

*Attorneys for Plaintiff*

 /s/  *Adam E. Miller*