IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, *EX REL*. KWAME RAOUL, ATTORNEY GENERAL, )<br><br>        Plaintiff,<br><br>   v.<br><br>MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA LLC,<br><br>        Defendants. | Case No.  22 C 5339<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff the People of the State of Illinois, ex rel. Kwame Raoul, Attorney General sued defendants Monsanto Company ("New Monsanto"), Solutia Inc. ("Solutia"), and Pharmacia LLC ("Old Monsanto") in the Circuit Court of Cook County, Illinois, alleging that for decades defendants manufactured, marketed, and sold polychlorinated biphenyls ("PCBs") that have now led to the environmental contamination of the State's creeks, rivers, lakes, and beaches, and the degradation of its wildlife and other natural resources. The 96 page 459 paragraph complaint, which reads as much like a press release as it does a judicial pleading, asserts twelve counts against all defendants. Counts I-VI are labeled as "Causes of Action Regarding Statewide PCB Contamination." Count I is a claim for strict liability, alleging that defendants PCB mixtures were not reasonably safe at the time they left defendant's control. Count II is a claim for strict liability for failure to warn and instruct. Count III alleges negligence. Count IV is a claim for public nuisance and Count V alleges trespass. Counts VI-XII are labeled as "Causes of Action Regarding Krummrich Plant Operations." Counts VI, VII, and VIII allege violations of the Illinois Environmental Protection Act, 415 ILCS 5/12(a), (d) and 5/9 (a). Count IX alleges a

violation of the Fish and Aquatic Life Code, 515 ILCS 5/1-150. Count X is a claim for public nuisance, Count XI is a claim for trespass, and Count XII alleges negligence.

Defendants removed the case to this court under 28 U.S.C. § 1442(a)(1), known as the deferral officer removal statute. Plaintiff has moved to remand the case back to the state court, arguing that defendants have failed to establish federal officer removal jurisdiction. For the reasons discussed below, that motion is denied.

## **BACKGROUND**

Plaintiff has sued defendants under two distinct theories. Under the first, plaintiff is seeking to hold defendants accountable for causing statewide contamination of Illinois' natural resources with PCBs due to defendants' manufacture, marketing, sale and distribution of the chemicals to customers across the state, knowing the chemicals would inevitably escape their application and cause widespread and dangerous contamination. Under its second theory, plaintiff seeks to recover damages for defendants' dumping, spilling, and otherwise releasing "a slew of toxic chemicals" from the Krummrich Plant in Sauget, Illinois, including "PCBs, chlorobenzenes, nitrochlorobenzene, and mercury-contaminated wastes, among many others."

According to plaintiff, defendants produced substantial volumes of PCB mixtures along with a host of other chemical products at the Krummrich Plant which defendants began to operate in 1917. Plaintiff alleges that defendants engaged in reckless and unlawful methods of waste disposal for decades, discharging massive amounts of hazardous wastes directly into the environment, including into sewers such that wastes entered the Mississippi River, "landfilling wastes such that they leached, leaked, and off-gassed into the surrounding soil, sediment, water

2

and air, and burning chemical wastes, particularly PCB wastes, such that PCBs and other compounds were emitted into the Illinois air during the incineration process."

The result, according to plaintiff, is that PCBs have become ubiquitous environmental contaminants, having contaminated Illinois' sediments, soil, submerged lands, ground and surface water, wildlife, fish, biota, air, and other natural resources on a statewide basis. Over 2,900 Illinois river and stream miles, 27,000 inland lake and reservoir acres and 64 miles of Illinois Great Lake shoreline are designated as PCB impaired, and dozens of Illinois waterbodies are subject to stringent fish consumption advisories due to PCB contamination. Sauget is so contaminated that, despite spanning barely five miles, it is home to two EPA Superfund sites and sits on groundwater so polluted that it cannot be used as a potable water supply and is not a viable option for industrial use.

Defendants removed the case to this court under 28 U.S.C. § 1442(a)(1), asserting that they are entitled to a government contractor defense, contending that they operated chemical plants and released and disposed of chemicals near the Krummrich Plant at the direction of the government during World War II, produced Agent Orange for the government at the Krummrich Plant pursuant to government specifications during the Viet Nam War and, at the behest of the government, continued to manufacture PCBs between 1970 and 1977 to prevent the collapse of the nation's electrical grid.

## DISCUSSION

Defendants, as the parties seeking removal, bear the burden of establishing federal jurisdiction. Baker v. Atlantic Richfield Company, 962 F.3d 937, 941 (7th Cir. 2020) (citing Betzner v. Boeing Co., 910 F.3d 1010, 1014 (7th Cir. 2018)). The Supreme Court has made

clear that courts must liberally construe § 1442 (a). Id. The court therefore "evaluates [defendants'] allegations in support of removal under the federal pleading standards, asking whether they are facially plausible. Id.

"Federal officer removal is appropriate when the defendant 1) is a person within the meaning of the statute, 2) is acting under the United States, its agencies, or its officers, 3) is acting under color of federal authority, and 4) has a colorable federal defense." Baker, 962 F.3d at 941 (quoting Betzner, 910 F.3d at 1015)). Plaintiff does not dispute that defendants are persons within the meaning of the statute, but challenges defendants' ability to establish the remaining criteria.

Plaintiff argues that defendants were not "acting under federal authority when it dumped hazardous wastes or placed toxic PCBs in the stream of commerce." The bulk of plaintiff's argument is that defendants cannot show "a sufficient relationship" between the federal direction it received and their "reckless discharge of hazardous contaminants into the sewers, waterways, burn pits, and landfills in Sauget." In making this argument, plaintiff appears to conflate the second and third criteria. As the Seventh Circuit stated in Baker, to establish the "acting under" criteria, the relevant inquiry is whether there was a special relationship between the defendants and the federal government. Baker, 962 F.3d at 941. The "relevant relationship" is "that of a private person 'acting under' a federal 'officer' or 'agency.' Id. at 942 (emphasis in original) (quoting Watson v. Phillip Morris Cos., Inc. 551 U.S. 142, 151 (2007). The "private person's acting under must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." Id. (emphasis in original). Thus, when a private contractor helps the government to produce an item it needs, that assistance helps officers fulfill other basic tasks and satisfies the

4

"acting under" requirement of the second criteria. That is precisely what happened in the instant case. Defendants have submitted undisputed evidence that it was producing Agent Orange for the government at the Krummrich Plant during the Viet Nam War and did so pursuant to government specifications. Absent defendants' aid, the government would have had to manufacture the product itself. Consequently, the court concludes that defendants have satisfies the second criteria of acting under federal authority.

What plaintiff is really arguing is that defendants' polluting conduct does not relate to the federal directives defendants acted under and thus cannot satisfy the third criteria. The relating to federal authority requirement "is distinct from the 'acting under' requirement in that it requires a "causal connection between the charged conduct and asserted official authority." Id. at 943. Plaintiff argues that there is no connection between the federal mandate to produce Agent Orange and defendants' improper disposal of the waste products. In support of this argument plaintiff points to several cases brought by residents of Sauget that have dealt with the same facts and rejected the defendants' efforts to remove the case to federal court. Plaintiff's argument can be summed up by the court's statement in Anderson v. Hackett, 646 F. Supp. 2d 1041, 1054 (S.D. Ill. 2009):

> As the Monsanto Defendants point out, numerous prior suits have established that Agent Orange was produced to "the detailed specifications" of the federal government "concerning the makeup, packaging, and delivery" of the herbicide. However, the cases cited . . . were all products liability cases involving claims that the defendant companies had manufactured an unreasonably dangerous product. In contrast, Plaintiffs' claims arise from the handling, storage, and disposal of Defendants' products, including Agent Orange. Again, Plaintiffs complain, not that Monsanto produced these hazardous substances, but that they, essentially, spilled them. The Monsanto defendants have not directed this Court to any evidence suggesting that the federal government

> directed them to act in any of the ways alleged by Plaintiffs to have caused them harm. That is, the federal government did not direct the Monsanto Defendants to "spill" or "incompletely incinerate" or "improperly burn" or "discharge into surface or wastewater systems" or "improperly landfill" Agent Orange or any other hazardous substance. Therefore, the fact that they produced Agent Orange to government specifications does not establish that the federal government directed them to perform the acts that form the basis for the liability claimed here.

See also Mobely v.Cerro Flow Prod., Inc., 2020 WL 55906 at *7 n.4 (S.D. Ill. Jan. 5, 2010); Brown v. Cerro Flow Prod., Inc., 2010 WL 55905 at * 7 n.4 (S.D. Jan. 4 2010); Custer v. Cerro Flow Prods., Inc., 2009 WL 5033931 at *8 (S.D. Ill. Dec. 15, 2009); Carter v. Monsanto Co., 635 F. Supp. 2d 479, 497 (S.D.W. Va. 2009).

The problem with this argument is that the cases cited all predate the Removal Clarification Act of 2011, which broadened the federal officer removal statute to include actions "not just causally connected, but alternatively connected or associated, with acts under color of federal office." Baker, 962 F. at 943. The cases all also predate the Seventh Circuit's opinion in Baker, in which the court specifically abandoned the causal connection test and "join[ed] all the courts of appeals that have replaced causation with connection and expressly adopt that standard as our own." Id. at 944. As a result, the court concluded that the defendant companies did not need to allege "that the complained-of conduct [the same conduct as alleged in the instant case] itself was at the behest of a federal agency. It is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship' between the Companies and the federal government." Id.

Nor does it matter that some of plaintiff's allegations of contamination do not relate to defendants' acts under color of federal office because "removal need not be justified as to all

claims asserted in the plaintiffs' complaint; rather the defense need only apply to one claim to remove the case." Id. at 945. Consequently, the court concludes that defendants have satisfied the third criteria.

      Finally, the court concludes that defendants also have a colorable federal defense that entitles them to removal. The government contractor defense asserted by defendants "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design." Id. The defense "broadly applies to any product supplied for government use so long as it conformed to the government's "reasonably precise specifications." Id. In the instant case, it is undisputed that defendants manufactured Agent Orange in accordance with very specific specifications. Their disposal of the waste products is connected to the manufacture of the government's required product. For a defense to be colorable, it need only be plausible. The question is not whether defendants' defense will succeed on the merits, but which court decides the merits. "[W]e are concerned with who makes the ultimate determination, not what that determination will be." Id. at 947. Consequently, the court concludes that defendants have established a colorable federal defense.

## **CONCLUSION**

For the reasons described above, the court denies plaintiff's motion to remand [18]. Defendants are ordered to answer or otherwise plead to the complaint by February 6, 2012. The parties are to submit joint status report on this court's form by January 20, 2023.

**ENTER:**

*Robert W. Gettleman (signature)*

**Robert W. Gettleman
United States District Judge**

**DATE: January 9, 2023**