IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| *EX REL.* KWAME RAOUL, Attorney General, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  22 C 5339 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MONSANTO COMPANY, SOLUTIA INC., and | ) | |
| PHARMACIA LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff the People of the State of Illinois, ex rel. Kwame Raoul, Attorney General (the "State") sued defendants Monsanto Company ("New Monsanto"), Solutia Inc. ("Solutia"), and Pharmacia LLC ("Monsanto") in the Circuit Court of Cook County, Illinois, alleging that for decades defendants manufactured, marketed, and sold polychlorinated biphenyls ("PCBs") that have now led to the environmental contamination of the State's creeks, rivers, lakes, and beaches, and the degradation of its wildlife and other natural resources.  The complaint asserts twelve counts against all defendants.  Counts I-VI are labeled as "Causes of Action Regarding Statewide PCB Contamination."  Count I is a claim for strict liability, alleging that defendants' PCB mixtures were not reasonably safe at the time they left defendants' control.  Count II is a claim for strict liability for failure to warn and instruct.  Count III alleges negligence.  Count IV is a claim for public nuisance and Count V alleges trespass.  Counts VI-XII are labeled as "Causes of Action Regarding Krummrich Plant Operations."  Counts VI, VII, and VIII allege violations of the Illinois Environmental Protection Act, 415 ILCS 5/12(a), (d) and 5/9 (a).  Count IX alleges a violation of the Fish and Aquatic Life Code, 515 ILCS 5/1-150.  Count X is

a claim for public nuisance, Count XI is a claim for trespass, and Count XII alleges negligence. Defendants have moved to dismiss Counts I through V, IX, and XI under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   In addition. Defendants argue that the State is not entitled to a medical monitoring fund, past and future damages for public nuisance, or natural resource damages as relief.   For the reasons described below, the motion is granted in part and denied in part.

## BACKGROUND[1]

The State has sued defendants under two distinct theories.   Under the first, the State is seeking to hold defendants accountable for causing statewide contamination of Illinois' natural resources with PCBs due to defendants' manufacture, marketing, sale, and distribution of the chemicals to customers across the state, knowing the chemicals would inevitably escape their application and cause widespread and dangerous contamination.   Under its second theory, the State seeks to recover damages for defendants' dumping, spilling, and otherwise releasing "a slew of toxic chemicals" from the Krummrich Plant in Sauget, Illinois, including "PCBs, chlorobenzenes, nitrochlorobenzene, and mercury-contaminated wastes, among many others."

According to the complaint, Monsanto manufactured over 99% of commercial PCBs used in the United States, with much of it manufactured at the Krummrich plant in Illinois. Monsanto knew of the adverse human and environmental health consequences of exposure to PCBs and knew that their chemical properties would cause PCBs to inevitably contaminate Illinois natural resources as a direct result of their ordinary and intended uses.   As early as the 1930s Monsanto recognized that PCBs are hazardous chemicals that produce "systemic toxic

---

1 The background facts are taken from the complaint and are assumed true for purposes of resolving the instant motion.   Adam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013).

effects" following prolonged exposure and instructed its customers to vent PCB vapors directly into the air.   Monsanto knew, however, that PCB vapors, whether released from industrial facilities or from products containing PCBs, would uncontrollably escape into air and, because of their chemical stability, would deposit on soils and in water to persist indefinitely in the environment.   By the 1960s Monsanto insiders had acknowledged that normal, intended uses of products containing PCBs were the cause of contamination and that PCBs would become "nearly global environmental contaminants leading to serious environmental harms.

The State alleges that rather than taking reasonable actions to prevent or mitigate the foreseeable harm that use of PCBs posed, in 1969 Monsanto instead convened an internal committee to protect PCB revenues and the company's image.   Monsanto denied any knowledge of PCBs tendency to systematically contaminate the environment, stating publicly that it "cannot conceive how the PCBs can be getting into the environment in a widespread fashion" and "does not believe the PCBs to be seriously toxic."   By the mid-1970s, however, it became clear that the PCB business could not be saved, and in 1977 Monsanto ceased production under pressure from the United States Environmental Protection Agency ("EPA").   The State alleges that as a result of Monsanto's conduct, PCBs have become "ubiquitous contaminants" polluting Illinois' natural resources.

## DISCUSSION

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss certain counts of the complaint for failure to state a claim.   Such a motion challenges the sufficiency of the complaint, not its merits.   Fed. R. Civ. P. 12(b)(6); see Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must not only provide

3

the defendant with fair notice of a claim's basis but must also be facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Starting with what they apparently believe to be their best position, defendants argue that the State's public nuisance claim in Count IV should be dismissed because "Illinois law does not recognize public nuisance liability for the placement of a product into the stream of commerce." For this proposition, defendants cite In re Syngenta Mass Tort Actions, 272 F. Supp. 3d 1074, 1091-92 (S.D. 2017), which noted that "a seller of a product is not liable for a private [or public] nuisance caused by the use of that product after it has left the seller's control," and held that because the plaintiff had not refuted that general rule "to show that liability should follow in the absence of the seller's continuing control over the product," the plaintiff's nuisance claims were dismissed.

As the State notes, however, the Syngenta court relied on the Seventh Circuit's opinion in City of Bloomington, Ind. v. Westinghouse Elec. Corp., 891 F.2d 611, 615 (7th Cir. 1989), for its statement of the general rule. Bloomington was decided under Indiana law, and the Illinois Supreme Court, when evaluating the City of Chicago's public nuisance claim against gun manufacturers, expressly rejected Bloomington's "control" requirement. City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 403 (2004). Tellingly, in finding Bloomington unpersuasive, the court found (id. (citations omitted):

> Control is not a separate element of causation in nuisance cases
> that must be pleaded and proven in addition to cause in fact and

4

legal cause. It is, rather, a relevant factor in both the proximate cause inquiry and in the ability of the court to fashion appropriate injunctive relief. When the nuisance results from a condition or conduct upon land, control over the land is generally a necessary prerequisite to the imposition of liability. However, when the nuisance claim results from the use or misuse of an object apart from land, or conduct unrelated to a defendant's use of land, lack of control of the instrumentality at the time of injury is not an absolute bar to liability.

Illinois, like many other states, follows § 821 B of the Restatement (Second) of Torts when evaluating public nuisance claims. Courts interpreting this section generally reject attempts to impose a control requirement, instead focusing on whether the defendant created or participated in the creation of the nuisance. See Commonwealth v. Monsanto Co., 269 A. 3d 623, 652 (Pa. Commw. Ct. 2021) (allegation that Monsanto "was responsible for PCBs entering the Commonwealth's waters because Defendants knew that the uses for which they marketed, sold, and distributed PCB mixtures would result in leaching, leaking, and escaping their intended applications and contaminating (i.e., polluting) those waters," was sufficient to support public nuisance claim.).

Defendants' reply brief fails to respond to this argument in any meaningful way and fails to address the numerous cases cited by the State where courts have upheld the exact same public nuisance claims against Monsanto. Consequently, because the complaint alleges that Monsanto knew when it sold its product that the PCBs would inevitably leach into and pollute the State's natural resources even in the absence of any negligence on the part of the buyer, the court denies defendants' motion to dismiss Count IV.

Next, defendants attack the State's trespass claims in Counts V and XI, arguing, first, that the State lacks standing to bring the claims because it lacks the exclusive right to possession of

5

the public natural resources at issue, and second, because defendants had no control of their product at the time of the alleged trespass.

It is true, as defendants argue, that "[t]o prevail on a trespass claim under Illinois law, a plaintiff must plead and prove negligent or intentional conduct by the defendant which has resulted in an intrusion on the plaintiff's interest in exclusive possession of land." Village of Depue, Ill., 632 F. Supp. 2d 854, 865 (C.D. Ill. 2009). Defendants argue that the trespass claims pertain to alleged harms to public lands, waters and other natural resources that the State holds in trust for the use of the public, but over which it lacks exclusive control. See State ex rel. Jennings v. Monsanto Co., 2022 WL 2663220 at *6 (Del. Super. Ct. July 11, 2022) ("It is undisputed that the State has regulatory control over State land and resources. However, there is no support for the proposition that the State has exclusive possession of water. Lack of exclusive possession negates the State's standing to seek damages on a trespass theory.); N.J. Dep't of Envtl. Prot. V. Hess Corp., 2020 WL 1683180 at *6 (N.J. Super. Ct. App. Div. April 7, 2020) ("Land in public trust is held by the State on behalf of a second party, the people. Such land cannot be in 'exclusive possession' of the State as the interest created by the doctrine is intended to ensure that others have the use of the same land. It does not grant the State exclusive possession of the property.").

The State counters that its status as trustee of natural resources gives it the right to bring trespass claims. Citing the Restatement (Second) of Trusts § 280, the State argues that a trustee has the right to bring the same actions as an ordinary owner would have, as if the trustee held the property free of trust. The whole point of being a trustee, the State argues, is to be able to protect the trust property for the benefit of the beneficiary, which in this case, is the people. In

addition, the State argues that it is proceeding <u>parens patriae</u>, which gives it the right to protect

its "quasi-sovereign" interests, which are the "set of interests that the State has in the well-being

of its populace." <u>Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez</u>, 458 U.S. 592, 602 (1982).

"[I]f the health and comfort of the inhabitants of a state are threatened," "the state is the proper

party to represent and defend them." <u>Missouri v. Illinois</u>, 180 U.S. 208, 243 (1901). <u>See</u> <u>New</u>

<u>Hampshire v. City of Dover</u>, 153 N.H. 181, 891 A.2d 524, 527-530 (2006) (state had <u>parens</u>

<u>patriae</u> standing to bring contamination suits, including for trespass.); <u>State of Rhode Island v.</u>

<u>Atl. Richfield Co.</u>, 357 F. Supp. 3d 129 (D. R.I. 2018).

     Although neither party has presented an Illinois case on point, the court concludes that

the State has the better argument. If the State cannot bring the action to protect its natural

resources, those resources would remain unprotected. In its capacities both as trustee and

<u>parens patriae</u>, the State has the authority and obligation to protect the people's natural resources.

     Defendants also argue that the State has simply failed to state a trespass claim because

"[i]n accordance with Restatement principles, courts do not impose trespass liability on sellers

for injuries caused by their product after it has left the ownership and possession of the sellers."

<u>City of Bloomington</u>, 891 F.2d at 615. This is the same control argument that the court already

rejected above and rejects again. Under Illinois law, "[o]ne can be liable in trespass for an

intrusion by a thing or third person if he acts with knowledge that his conduct will, to a

substantial degree of certainty, result in the intrusion." <u>Dietz v. Illinois Bell Tel. Co.</u>, 154 Ill.

App. 3d 554, 559 (1st Dist. 1987). The State has alleged that Monsanto knew that the intended

uses of its products would cause PCBs to invade Illinois" natural resources, due to the laws of

physics and chemistry.   No more is required for notice pleading.   Consequently, defendants'
motion to dismiss Counts V and XI is denied.

Defendants next argue that the State's strict liability claims in Counts I and II fail as a
matter of law because they seek "an unprecedented expansion of strict liability law to impose a
new duty on the product manufacturer owed to the public at large or the State itself for the
protection of the environment."   Citing Mikolajczyk v. Ford Motor Co., 901 N.E. 329, 335 (Ill.
2008), defendants argue that Illinois recognizes a cause of action for strict liability in tort only
against the manufacturer of a product whose defective condition makes it unreasonably
dangerous to the user or consumer.   Because the State was neither a user nor consumer of
defendants' product, defendants argue it has no claim.   Yet, defendants acknowledge that
Illinois law extends a manufacturer's duty beyond the user or consumer, to "those individuals to
whom injury from a defective product may reasonably be foreseen and only those situations
where the product is being used for the purpose for which it was intended or for which it
reasonably foreseeable that it may be used."   Winnett v. Winnett, 310 N.E.2d. 1 (Ill. 1974).
"[I]n products liability, such individuals are not only those within the classes of users and
consumers, but may include persons (such as the innocent bystander) outside the purchasing
chain of the product."   Court v. Grzelinski, 72 Ill. 2d 141, 146 (1978).   As the Southern District
of Illinois recently held in another case against Monsanto, City of East St. Louis v. Monsanto
Co., 2021 WL 3861054 at *4 (S.D. Ill. Aug. 30, 2021) (internal citations omitted):

> Illinois law recognizes that manufacturers owe a duty to persons
> who might foreseeably be injured when a product is used as
> intended, even if those persons are outside the chain of
> distribution.   The question of foreseeability is ordinarily a
> question of fact for the jury to decide.   The City has plead that
> Monsanto produced and distributed PCBs and products containing

> PCBs, knowing that their use and disposal would ultimately
> contaminate city lands.   Therefore, the City has adequately plead
> its product liability claims.

This court agrees with the court in <u>City of East St. Louis</u> and denies defendants' motion to dismiss the strict liability claims in Counts I and II.[2]

Defendants next argue that the negligence claim fails as a matter of law, because in Illinois a plaintiff's burden of establishing negligence-based product liability is more rigorous than strict liability.   <u>See</u> <u>Blue v. Env't Eng'g, Inc.</u>, 215 Ill. 2d 78, 95-96 (2005).   Defendants then argue that because the strict liability claims fail, the negligence claim must also fail.   Of course, the court rejected defendants' argument that the strict liability claims fail, requiring that this argument also be rejected.

Defendants then repeat their argument that they owed no duty to the State because a manufacturer's duty generally runs to the users of its products, or to others with whom it has a special relationship, and the State has not alleged that it used defendants' PCBs.   Again, relying on <u>Beretta</u>, 821 N.E. 2d at 1125, defendants argue that it owes no duty to the public at large.

The touchstone of an Illinois court's duty analysis "is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff.   <u>Marshall v. Burger King Corp.</u>, 222 Ill. 2d 422, 435 (2006).   Four factors inform the court's inquiry: 1) the reasonable foreseeability of the injury; 2) the likelihood of the injury; 3) the magnitude of the burden of guarding against the injury; and the consequences of placing that burden in the defendant.   <u>Id.</u>

---

2 In their motion defendants argued that the claims are barred by the statute of repose for products 735 ILCS 5/13-213(d).   In its response the State argued that the statute does not apply to it.   Because the defendants have failed to reply to the State's argument, defendants have waived their statute of repose defense.

(citing <u>Beretta</u> 213 Ill. 2d at 391). "[T]he existence of a duty turns in large part on considerations of public policy," <u>id.</u> at 441, and "[a]s a matter of public policy, it is best to place the duty to protect against a harm on the party best able to prevent it." <u>Smith v. MHI Injection Molding Machinery, Inc.</u>, 972 F. Supp. 2d 1049, 1054 (N.D. Ill. 2013).

  In the instant case, the State has alleged that not only was it foreseeable that defendants' PCBs would leach into and pollute the natural resources, but that Monsanto knew this was the case when it continued to sell its products. Accepting these allegations as true, the court concludes that as a matter of public policy it is best to place the duty to protect against the harm on defendants, as the party best able to prevent it. Consequently, the court denies defendants' motion to dismiss Count III.

  Defendants also argue that the States allegations of what they term "continuing tort claims" for failure to warn and negligence should be dismissed because, in Illinois, a continuing tort arises from continuous tortious or unlawful activity, not by continuing ill effects flowing from an initial tort. <u>See</u> <u>Feltmeier v. Feltmeier</u>, 207 Ill.2d 263, 278 (2003). Because the State has not and cannot allege that defendants engaged in any unlawful conduct after 1977 defendants have "no duty to issue postsale warnings or retrofit its products to remedy defects first discovered after a product has left its control." <u>Jablonski v. Ford Motor Co.</u>, 955 N.E. 2d 1138, 1160 (Ill. 2011). <u>Jablonski</u> noted, however, that "under established Illinois precedent, when a design defect is present at the time of sale, the manufacturer has a duty to take reasonable steps to warn at least the purchaser of the risk as soon as the manufacturer learns or should have learned of the risk created by its fault." <u>Id.</u> "Illinois law has been reluctant to impose a duty to warn beyond the time when the product leaves the manufacturer's control <u>unless the</u>

10

manufacturer knew or should have known at the time the product was defective." Kempes v. Dunlop Tire and Rubber Corp., 192 Ill. App. 3d 209, 218 (1st Dist. 1989) (emphasis added).

In the instant case, the State has alleged that Monsanto knew of the obvious dangers the PCBs posed, even before selling them, without issuing any warnings. Defendants' motion to dismiss the continuing duty claims is denied.

In Count IX the State alleges a violation of the Fish and Aquatic Life Code, 515 ILCS 5/1-150. Section 1-175 of the act provides that "[a]ll prosecutions under this Code shall be commenced within 2 years from the time the offense charged was committed." Defendants argue that this limitations period bars the State's claim. The State counters that the limitations period applies to criminal prosecutions only, and that there is no statute of limitations on a civil claim. But the State has failed to provide any support for this assertion, or, for that matter, anything to suggest that civil actions are available under the Code. The court grants defendants' motion to dismiss Count IX.

Finally, defendants argue that the State is not entitled to some of the relief it requests. First, they argue that the Stated is not entitled to a "medical monitoring fund." The court agrees because the State has failed to allege any present physical injury as a result of defendants' conduct. See Berry v. City of Chicago, 181 N.E. 3d. 679, 688-89 (Ill. 2020) (an increased risk of future harm is an element of damages that can be recovered for a present injury but that such future risk is not the injury itself). Absent an allegation of any present injury, the State cannot recover for the risk of future injury.

Next, relying on Beretta, 213 Ill. 2d at 415, defendants argue that the State cannot recover damages for its public nuisance claims. Beretta did not hold that damages were not available as

11

a matter of law, however, only that they were barred in that case by the economic loss doctrine, because no damage to property was alleged. Id. at 423. The Beretta court saw "no reason to treat claims of public nuisance differently than claims of private nuisance." Id. at 424. Thus, because the economic loss doctrine does not apply to the instant case, Beretta does not apply, and the court denies defendants' motion to dismiss (really to strike) the State's claim for damages.

Lastly, the court rejects defendants' motion to strike the State's claim for "natural resources damages," which the court construes as just another way of asserting a claim for monetary damages for the alleged tort violations.

## **CONCLUSION**

For the reasons described above, defendants' motion to dismiss partially [47] is granted as to Count IX and the State's claim for a medical monitoring fund and denied in all other respects. Defendants are ordered to answer the remaining counts of the complaint by May 31, 2023. The parties are directed to file a joint status report on this court's form by June 8, 2023.


**ENTER:**


**Robert W. Gettleman**
**United States District Judge**

**DATE: May 5, 2023**