IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE ) <br> OF ILLINOIS, *EX REL*. ) <br> KWAME RAOUL, ) <br> ATTORNEY GENERAL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MONSANTO COMPANY, et al. ) <br> ) <br> Defendants. ) | No. 22 C 5339 <br><br> Magistrate Judge M. David Weisman |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on defendants' Motion to Compel Plaintiff to Produce Discovery From State Agencies [68]. For the reasons set forth below, the Court grants the motion in part.

**Background**

The People of the State of Illinois (the "State"), though the Illinois Attorney General,[1] sue defendants Monsanto Company, Solutia, Inc., and Pharmacia, LLC (collectively, "Monsanto") for allegedly contaminating the Illinois environment by manufacturing, marketing, distributing, and selling toxic indestructible polychlorinated biphenyls ("PCBs") and for Monsanto's alleged discharges of PCBs and other hazardous materials from the W.G. Krummrich Plant in Sauget, Illinois. The State alleges comprehensive environmental harm—

---

[1] The Attorney General brings this suit on behalf of the People of the State of Illinois, pursuant to the Attorney General's *parens patriae* authority.

including harm to the State's waterways, soil, wildlife, air, and other natural resources—because of Monsanto's actions.

The case is in the discovery stage. Monsanto filed this motion to compel at the outset of written discovery, per this Court's instructions, based on a fundamental Rule 34 dispute as to whether the State will be obligated to produce responsive documents in the possession of state agencies. Monsanto argues that the Illinois Attorney General (who is, for all intents and purposes, the plaintiff in this case) has the legal right to obtain documents and information in possession of state agencies, and therefore the Court should rule that the State is obligated to produce responsive documents in the possession, custody, or control of state agencies.[2] The State argues that the relief sought by Monsanto would infringe on separation of powers principles between the Attorney General and the Illinois Governor, and that this Court cannot make state agencies parties to the case. The State also claims that the Attorney General does not have an unfettered legal right to obtain documents from non-party state agencies, and, therefore, the Attorney General cannot produce documents in the possession, custody, and control of state agencies pursuant to Rule 34 document requests. Rather, the State proposes that Monsanto can obtain such documents through third-party discovery tools.

## Discussion

Federal Rule of Civil Procedure 34 permits a party to serve document requests to any other party within the scope of Rule 26(b), when the documents are within the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). When a party fails to respond to discovery, or when its response is insufficient, the other party may move to compel under Rule

---

[2] Defendants' motion does not limit its request for relief to any particular state agencies. Thus, the Court reads the motion as seeking an order that applies to *all* state agencies.

37.[3] *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19 C 2436, 2021 WL 4894701, at *2 (N.D. Ill. Oct. 20, 2021). "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotations and citations omitted); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014) (citing test for control in *Dexia*). Magistrate Judges have "extremely broad discretion" in controlling discovery matters. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

## The State's Complaint

It is undisputed that the State's Complaint expressly references the following state agencies: the Illinois Environmental Protection Agency ("IEPA"), the Illinois Department of Natural Resources ("IDNR"), the Illinois Department of Agriculture ("IDOA"), and the Illinois Department of Public Health ("IDPH"). In the "Parties" section of the Complaint, underneath the subheading of "Plaintiff," the State identifies, *inter alia*, IEPA and IDNR. ECF 1-1 at p. 12. In its brief, the State also concedes that the Complaint "intersects with the missions of these agencies, that the funds the AG would recover would, in part, compensate the State for what the agencies have spent on behalf of the public, that the state agencies possess information relevant to this case, and that the AG asserts claims under statutes otherwise administered by state agencies." ECF 72 at p. 4.

---

[3] At the time defendants filed their motion, the State had not provided responses and objections to specific requests for production of documents. However, at the April 17, 2023, status hearing, the Court determined that motion practice is required on this issue, based on the State's position that it is not required to produce any documents that are not within the possession, custody, or control of the Attorney General's office. Thus, the motion is ripe for decision.

With all that said, no state agency has filed an appearance in the case. Thus, the State makes a basic argument that because no state agencies are parties to the case, documents possessed by state agencies cannot be produced via Rule 34 document requests. However, that argument is not consistent with the language of Rule 34. Relevant here, Rule 34 allows for the serving of document requests when the documents at issue are within the "control" of the responding party. In other words, a responding party may "control" documents that are not in its possession. When such "control" exists, the responding party is still obligated to produce the responsive documents—regardless of possession.[4] Thus, the mere fact that state agencies are not parties to this litigation is not dispositive nor particularly persuasive in the resolution of this motion.

<u>The Illinois Constitution – Separation of Powers Considerations</u>

The State's predominant objection to Monsanto's motion is one rooted in the Illinois Constitution: the Illinois Attorney General's Office operates independently of the rest of the executive branch, including state agencies (who are controlled by the Illinois Governor). According to the State, this bedrock separation of power between the Attorney General and the Governor prevents this Court from rendering state agencies parties to this litigation, or otherwise intermingling the Attorney General and non-party state agencies for discovery purposes. In support of this argument, the State cites to numerous non-binding decisions from other states. *See, e.g., Com. v. Ortho-McNeil-Janssen Pharmaceuticals*, 2012 WL 5392617, at *3 (Mass. 2012) ("Each of [the Governor and Attorney General] is an elected official operating independently of the other. If this Court were to conclude that state agencies, even those within

---

[4] We further analyze the Rule 34 "control" issue, *infra*.

the executive branch, necessarily become 'parties' for discovery purposes any time that the Attorney General exercises her exclusive authority to bring an enforcement action, that could upset the constitutional balance of power."); *U.S. v. Am. Exp. Co.*, 2011 WL 13073683, at *2 (E.D.N.Y. July 29, 2011) ("In all cases, the dual structure of the States' executive branches was purposeful; the State Attorneys General are to operate independently of the State Governors. . . . [T]hese state agencies—even those that are part of the executive branch—are neither subject to common executive control nor interrelated with the State Attorneys General, and so should not be aggregated together for discovery purposes."). *See also New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.* ("*Amtrak*"), 233 F.R.D. 259, 266 (N.D.N.Y. 2006) (warning of absurd, unduly burdensome, and untenable results if state agencies were subject to discovery requests any time the State of New York brought a lawsuit).

As an initial matter, contrary to the State's implication, the Court is not deciding today whether any Illinois state agencies must join this litigation as a "party." Rather, we are deciding whether the Illinois Attorney General, in responding to written discovery requests to produce documents, must produce responsive documents that are possessed by state agencies. As we understand it—and the State cites to no case saying otherwise—an affirmative ruling does not automatically result in agencies becoming "parties" to this case. It simply means that the Illinois Attorney General (operating under its *parens patriae* authority as the plaintiff in this case) must produce responsive documents possessed by state agencies. Thus, the State's argument that this Court is unable to make a state agency a "party" to this case is either irrelevant to our decision or significantly underdeveloped.[5]

---

[5] The argument is therefore waived. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

The larger issued raised by the State is whether requiring the Attorney General to produce responsive documents possessed by non-party state agencies would somehow upset the balance of power between the Illinois Attorney General, who is the chief "legal officer of the State," and the Illinois Governor, who has "the supreme executive power." Ill. Const. art. V, §§ 8, 15. With few exceptions, all state agencies are "directly responsible to the Governor." 15 ILCS 15/3.1.

Despite these unique and separate roles, which the Court appreciates, there is zero Illinois caselaw stating that non-party state agencies cannot be subject to party discovery in cases brought by the Illinois Attorney General under its *parens patriae* authority. The State cites to caselaw from other states for that proposition. From a constitutional perspective, some of these cases warn that such a discovery posture could result in the state governor and/or state agencies having a "virtual veto" over the attorney general bringing related actions in the future. *E.g.*, *Am. Exp*, 2011 WL 13073683, at *2. More generally, the *Amtrak* case warns of "absurd" and "unduly burdensome"[6] results if state agencies were subjected to party discovery requests in every case brought by the attorney general. *Amtrak* at 266.

The Court finds these arguments to be speculative and generally unpersuasive. As to the "virtual veto" concern, the State has not adequately explained how granting Monsanto's motion would (or could) result in the Illinois Governor preventing or obstructing future lawsuits by the Illinois Attorney General. To the extent the Governor does not want the Attorney General to bring a particular action, nothing we decide today affects his ability (or rather, his *inability*) to

---

[6] In this case, the State has not made any claims of undue burden – for good reason. The State has not indicated that party discovery burdens on state agencies will be any greater or different than third-party discovery burdens on these same state agencies. Indeed, through one discovery mechanism or another, the relevant state agencies are going to receive extensive document requests—and the Attorney General's office will likely assist the agencies in responding. We fail to see, and the State has failed to illuminate, why party discovery requests are more intrusive and/or burdensome.

block such an action—at least based on the conclusory assertions presented to this Court. Without more explanation, the Court is unpersuaded that granting Monsanto's motion will stir up constitutional problems between the two state leaders, either now or in the future.[7]

We briefly address two cases that the State heavily relies upon for its constitutional argument. First, in an analogous procedural posture, a federal judge in New Mexico ruled that the New Mexico Attorney General had no authority or capability to respond to discovery requests directed at New Mexico state agencies without cooperation from the agencies. *Gold King Mine Release in San Juan Cnty., Colorado*, 2021 WL 847971 (D.N.M. Mar. 5, 2021). The court noted a divided executive branch as to separation of power between the state agencies (controlled by the New Mexico Governor) and the New Mexico Attorney General. *Id*. at *3. The Court also noted that no state law required state agencies to produce documents upon request from the New Mexico Attorney General.[8] *Id*. However, as noted by Monsanto, the New Mexico Attorney General's powers differ from that of the Illinois Attorney General. Indeed, the New Mexico Attorney General only retains her power via statute, whereas the Illinois Attorney General has both statutory powers and more expansive common law authority. *State v. Block*, 263 P.3d 940, 945 (N.M. Ct. App. 2011) (citing *State v. Davidson*, 275 P. 373, 375); *People ex*

---

[7] To be clear, this Court agrees that the Illinois Attorney General cannot intrude on the Illinois Governor's supreme executive authority, which includes managing state agencies. However, it is also clear to this Court that the Illinois Attorney General is not so detached from Illinois state agencies such that any discovery-related connection between the Attorney General and non-party state agencies would offend constitutional separation of powers principles. (*See, infra*, discussing the Attorney General's exclusive role in managing the legal affairs of state agencies—a role that is rooted in the Illinois constitution.) This is particularly true in this case, where the State's Complaint indicates a shared interest between the Illinois Attorney General, IEPA, IDNR, IDPH, and IDOA to hold Monsanto accountable for its alleged environmental harms.
[8] This aspect of the court's decision indicates that the court's ruling turned on Rule 34 "control" issues just as much (if not more so) than New Mexico's constitutional structure. Thus, we also address *Gold King Mine*, *infra*, in our analysis of Rule 34.

*rel. Barrett v. Finnegan*, 38 N.E.2d 715, 717 (Ill. 1941). Thus, *Gold King Mine* is generally not persuasive.

Second, in *State of Ohio v. Monsanto Co.*, Pharmacia, a successor to Monsanto, filed a motion to compel nonparty state agencies to comply with discovery requests.[9] Hamilton C.P. No. A1801237, at 1 (Oh. Ct. Common Pleas Dec. 2, 2020). Relying heavily on an Ohio Supreme Court case, the state court denied the motion and held that the state's constitution prevented her from conflating the State and the state's agencies. *Id*. at 4 ("The case of *State ex rel Merrill v. Ohio Dept of Natural Resources* . . . demonstrates that the State and its agencies are not interchangeable parties in the context of litigation . . . [therefore,] Ohio's constitutional structure prevents the court from aggregating state agencies as parties and treating them as such for purposes of discovery."). However, we find no Illinois case law that is equivalent to the Ohio Supreme Court decision, nor does the State point to one. Without an Illinois case to supplement our analysis of the constitutional issue, we are unpersuaded by the applicability of the Ohio court's rationale to our own review of the facts and law in this case.

Additionally, other similar cases have reached opposite results. In *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018), a federal court determined that, in an analogous *parens patriae* case, discovery addressed to the State of Washington included non-party state agencies.[10] *See also State v. Purdue Pharma, L.P.,* 2020 WL 13566522, at *2

---

[9] The underlying claims in this Ohio case are very similar to the instant case, and the discovery issue presented to the Ohio state court mirrors the issue here. Thus, the State urges this Court to adopt the Ohio state court's analysis. However, despite the underlying facial similarities, the Ohio court's decision is not binding on this Court (as a matter of law), and the Ohio court's legal reasoning is premised on controlling legal precedent not present here.

[10] In *Gold King Mine*, the New Mexico court attempted to distinguish *GEO Grp*. because it was "based partly on Washington law." *Gold King Mine* at *3. The court elaborated: "It appears that under Washington state law, the attorney general has the power to obtain documents from non-party state agencies. *See State v. Reed*, 429 F.2d 870, 872 (Wash. 1967) (en banc) (stating "since the attorney general of the state is the legally-constituted adviser on legal matters to the [non-party] superintendent of the state hospital and the director of institutions (RCW 43.10.030, 040), a request-upon notice to the defendant-to the attorney general to instruct and advise the superintendent may have

(N.M. Dist. July 22, 2020) (discussing fundamental unfairness of allowing New Mexico attorney general to make broad claims on behalf of agencies without requiring the agencies to answer party discovery); *State ex rel. Rutledge v. Purdue Pharma L.P.,* 624 S.W.3d 106, 108 (Ark. 2021) (permitting party discovery to five non-party agencies that were referenced in an analogous Complaint, but not any others). The Court finds these cases to be highly persuasive. Specifically, we find that principles of fundamental fairness weigh in favor of allowing Rule 34 documents requests to encompass responsive documents in the possession of the state agencies expressly referenced in the State's Complaint, who undoubtedly hold many relevant documents and stand to benefit from the Attorney General's success in the case. The State has failed to demonstrate that the Illinois Constitution precludes such discovery management.

## Rule 34 "Control" Analysis

Finding no constitutional problem, we must now determine whether the Illinois Attorney General "controls" responsive documents that are in the possession of state agencies under Rule 34. In determining whether there is control, "the test is whether the party has a legal right to obtain the evidence." *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004)) (internal quotations and alterations omitted); *see In re Folding Carton*, 76 F.R.D. at 423 (explaining that the issue of custody and control "depends on the facts of the case"); *Tech. Concepts, L.P. v. Cont'l Mfg. Co.*, No. 92 C 7476, 1994 WL 262119, at *1 (N.D. Ill. June 10, 1994) (Williams, J.) ("The existence of this legal right of control depends upon the relationship between the parties, usually arising from statute, affiliation

---

[obtained the evidence]")." *Id*. We find the attempted distinction to be unavailing, primarily because the Washington case cited for this proposition is, at best, ambiguous as to whether the Washington Attorney General retains such power.

or employment."). "The party seeking production of documents bears the burden of establishing the opposing party's control over them." *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2022 WL 2237621, at *2 (N.D. Ill. June 22, 2022).

Under the Illinois Constitution, the Attorney General is "the legal officer of the State and shall have the duties and powers that may be prescribed by law." Ill. Const. art. V, § 15. The Illinois Supreme Court has confirmed that the Attorney General has common law authority to direct the legal affairs of the state, which includes "the competence to control all litigation on behalf of the State including intervention in and management of all such proceedings." *People v. Massarella*, 382 N.E.2d 262, 264 (Ill. 1978). The Attorney General's authority to direct the legal affairs of the state also extends to state agencies. *See Envt'l Prot. Agency v. Pollution Control Bd.*, 372 N.E.2d 50, 52 (Ill. 1977) ("As the chief legal officer of the State, the Attorney General has the constitutional duty of acting as legal adviser and legal representative of State agencies. The effect of this grant of power to the Attorney General is that Illinois is served by a centralized legal advisory system."). *see also Miller v. State*, 33 Ill. Ct. Cl. 144, 146 (1980) ("[T]he Attorney General is the sole representative of the various State offices and State agencies.")

Monsanto argues that the Attorney General's broad, constitutionally-based authority to serve as the chief legal officer of the State—and state agencies—necessarily encompasses a legal right to obtain documents from state agencies. Further, Monsanto posits that it defies logic for the Illinois Attorney General to retain broad authority to manage and control litigation on behalf of state agencies yet have no legal right to obtain documents from state agencies.

Conversely, the State claims that the Attorney General does not have a legal right to obtain state agencies' documents "on demand." ECF 72 at p. 13. The State further asserts that the Illinois Attorney General does not have an "unfettered" right to access state agency documents

under "all circumstances." *Id*. at 14. The State again asserts a constitutional claim that because state agencies are controlled by the Illinois Governor, the Attorney General lacks authority to compel agencies to produce agency documents.

Under the circumstances presented here, we conclude that the Illinois Attorney General, based on his broad statutory and common law powers to control and manage legal affairs on behalf of state agencies, has a legal right to obtain responsive documents from the state agencies referenced in the Complaint. Despite the State's characterization of the issue, we need not decide whether the Illinois Attorney General has "unfettered access to all state agencies' records under all circumstances." Rather, the issue is one of "control" under Rule 34 – nothing more, nothing less. Considering the specific circumstances of this litigation, we conclude that the Attorney General has a legal right to obtain responsive documents in the possession of the state agencies identified in the Complaint, who have necessarily supplied the information necessary for the Attorney General to prepare his Complaint, and have a significant interest in the Attorney General's success in the matter. *Accord State v. Purdue Pharma, L.P.*, 2020 WL 13566522, at *2 (N.M. Dist. July 22, 2020) (reasoning that, in cases where the state Attorney General chooses to bring an action on behalf of the State and asserts allegations implicating multiple state agencies—including seeking damages for expenses incurred by state agencies—it would be unfair to not allow party discovery into state agency documents); *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) (determining that the Washington Attorney General's status as the centralized legal office of state agencies supported a finding that non-party state agencies were included in discovery requests addressed to the State of Washington in a *parens patriae* case) .

The State again relies heavily on *Gold King Mine*, arguing that the Attorney General of New Mexico has equivalent authority to the Illinois Attorney General, and that despite this authority, a New Mexico court found that the New Mexico Attorney General did not have a legal right to obtain documents from state agencies. However, as we already noted, the State is incorrect as to the equivalency of powers between the Illinois Attorney General and the New Mexico Attorney General. The New Mexico Supreme Court clarified nearly one hundred years ago that the New Mexico Attorney General does *not* have the same common law powers of the Illinois Attorney General. *See State v. Davidson*, 275 P.3d 373, 374-375 (N.M. 1929). Accordingly, *Gold King Mine* is unpersuasive.

The State also relies heavily on *American Express*, where a judge in the Eastern District of New York found that the Attorney General had no legal right to acquire documents from non-party agencies. However, in *American Express*, the court specifically noted that the enforcement action at issue was *not* brought at the behest of any state agencies, nor were any damages being sought as compensation for state agency expenses. *American Express* at *2 n. 7. Had those circumstances applied in *American Express*, it is fair to question whether the court would have reached a different conclusion. Moreover, in this case, the State's Complaint indicates a joint effort between the Attorney General's Office and the identified state agencies to hold Monsanto accountable for its alleged environmental harm—including recovering damages for expenses incurred by state agencies. Thus, we find *American Express* to be significantly distinguishable.

Finally, although the case arose in a different context, the Court finds the principles outlined in *Meridian Laboratories, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131 (N.D. Ill. Sep. 25, 2019)—a case cited by Monsanto—to be persuasive. There, Judge Cummings ruled that a defendant corporation had control over certain documents in the possession of a related third-

party corporation (who was not a party to the case). When analyzing Rule 34 "control" issues in the corporate context, courts in this District have occasionally used a seven-factor analysis. *See id*. at 135-136 (collecting cases). While the Court declines to apply the entire seven factor test here, we find that two of the corporate "control" factors are particularly salient to the instant dispute: (1) whether the party and the related non-party exchange documents in the ordinary course of business; and (2) whether there is any benefit or involvement by the non-party in the litigation. *See id*.

As to the first factor, the Attorney General's office and state agencies unquestionably exchange documents in the ordinary course of business. Indeed, under Illinois law, the Attorney General's Office manages and controls litigation involving state agencies. Thus, it is inherently the case that the Attorney General and state agencies exchange documents in the regular course of business. As to the second factor, the agencies referenced in the Complaint stand to benefit from the State's success in the case. Indeed, the State intends to recover damages for agency expenses, and these agencies' respective missions intersect with the State's environmental and public health objectives in bringing this lawsuit. Finally, the State's anticipated "heavy reliance" on agency documents to build their case further militates in favor of finding "control." *See Meridian* at 138.

In short, pertinent "control" factors used in the corporate context are further persuasive authority supporting the Court's finding that the Illinois Attorney General has control over responsive documents in the possession of state agencies. However, as previously stated, the Court's ruling herein is limited to the agencies expressly referenced in the Complaint.

<u>Third-Party Discovery</u>

Lastly, the State argues that third-party discovery is sufficient for Monsanto to acquire all relevant information and that Monsanto is hyperbolic when it claims it would be denied sufficient discovery if their motion was denied. ECF 72 at p. 15. The State points to *State of Ohio v. Monsanto Co.* to prove its point, noting that more than three million pages of records were produced after defendants had to subpoena state agencies in that case. *Id*.

However, in the Reply brief, Monsanto notes that using subpoenas to acquire responsive documents from nonparty agencies resulted in the discovery process extending two years and significant increases in costs for both sides. ECF 73 at pp. 9-10. We disagree with the State's assertion that the Ohio case demonstrates that third-party discovery is a perfectly viable alternative to party discovery requests. It appears that these third-party discovery tools were not very efficient in the Ohio case. We believe that the efficiencies of direct party discovery are likely to achieve results more consistent with the explicit requirements of Fed. R. Civ. P. 1 (the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding") as well as the underlying design of Rule 26(b)(1) (directing that the scope of discovery should be informed by *inter alia* the parties' relative access to the relevant information and whether the burden or expense of the proposed discovery outweighs its likely benefit).

## Conclusion

For the above reasons, we grant defendants' Motion to Compel Plaintiff to Produce Discovery From State Agencies [68] in part. The State shall be required to produce responsive documents, pursuant to appropriate Rule 34 discovery requests, from the agencies referenced in the Complaint: Illinois Environmental Protection Agency; Illinois Department of Natural Resources; Illinois Department of Public Health; and Illinois Department of Agriculture. To the

extent Monsanto seeks documents from other state agencies, Monsanto must use third-party discovery tools.

| | |
|---|---|
| **SO ORDERED.** | **ENTERED:** |
| **Dated: June 20, 2023** | *M. David Weisman* (signature) |
| | **M. David Weisman** |
| | **United States Magistrate Judge** |